**SPIRO LLC**
Jason C. Spiro, Esq.
Jeffrey A. Shooman, Esq.
Carolyn B. Rendell, Esq.
830 Morris Turnpike, 2nd Floor
Short Hills, NJ 07078
(973) 232-0881
jspiro@spirolawllc.com
jshooman@spirolawllc.com
crendell@spirolawllc.com
*Attorneys for Plaintiffs Suzanne DeBiasa and Raymond DeBiasia*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SUZANNE DeBIASA and RAYMOND DeBIASA<br><br>Plaintiffs,<br><br>v.<br><br>JOE DONNELLY, AHUBY DONNELLY, DOVETAIL CAPITAL, LLC, AND BITCOIN FINANCIAL GROUP, LLC<br><br>Defendants. | Docket No.: |

Plaintiffs, Suzanne DeBiasa and Raymond DeBiasa (the "DeBiasas"), by and through their undersigned attorneys, hereby allege as follows:

**NATURE OF THE ACTION**

1.      Plaintiffs bring this action to recover investment funds that Defendants Joe Donnelly and Ahuby Donnelly (the "Donnellys") fraudulently diverted for their own personal and business use.

2.      In 2008, Plaintiffs invested $50,000 with the Donnellys to fund premiums for a stranger originated life insurance ("STOLI") policy.  Shortly thereafter, Plaintiffs borrowed funds to invest in a $300,000 promissory note (the "Note") with Dovetail

1

Capital, LLC ("Dovetail"), a closely held investment entity owned and controlled by the Donnellys.  The Note guaranteed a 12% rate of return per year on Plaintiffs' $300,000 investment, with the principal to be repaid in full within three years.

3.      To protect their investment, Plaintiffs entered into a security agreement with Dovetail (the "Security Agreement"), which provided Plaintiffs with a security interest in Dovetail's assets, including STOLI policies held by Dovetail, as collateral for their investment.

4.      The DeBiasas subsequently learned that they had invested in a fraudulent scheme, orchestrated by the Donnellys in order to divert Plaintiffs' retirement investment for their own personal use.

5.      In fact, the Donnellys never invested Plaintiffs' money or collateralized Dovetail with insurance policies.

6.      The Donnellys used the DeBiasas' stolen investments to help fund, among other things, expensive cars, a house in Florida, a Cessna airplane, and, ultimately, Defendant BitCoin Financial Group ("BitCoin Financial"), a company co-founded by Joe Donnelly.

7.      Indeed, in the Spring of 2015, Mr. Donnelly informed the DeBiasas that Dovetail "is now defunct" and "has NO assets," but "I'm a partner in a BitCoin Company," and "I'm doing everything in my power to rectify the situation."  Since that communication, the Donnellys have not repaid the DeBiasas on their investment.

8.      Plaintiffs have been severely damaged by the Donnellys' theft of their investments, and, accordingly, bring this action to recover their investments and related damages.

## PARTIES

9. Plaintiff Suzanne DeBiasa and Raymond DeBiasa are citizens of the State of New Jersey, and reside at 500 Summit Street, Norwood, NJ 07648.

10. Defendant Joe Donnelly is a citizen of the State of Florida, residing at 4523 San Mellina Drive, Coconut Creek, Florida 33073.

11. Defendant Ahuby Donnelly is a citizen of the State of Florida, residing at 4523 San Mellina Drive, Coconut Creek, Florida 33073.

12. Defendant Dovetail Capital, LLC is incorporated in the State of New Jersey, with its principal place of business at 331 Newman Springs Road, Red Bank, New Jersey 07701.

13. Defendant BitCoin Financial Group, LLC is incorporated in the State of New Jersey, with its principal place of business at 2 World Financial Center, 30th Floor, New York, New York 10281.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

15. Federal question jurisdiction is premised on § 1331 because Plaintiffs assert claims under the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and 17 C.F.R. § 240.10b-5.

16. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1337.

17. This Court has personal jurisdiction over the Defendants because the causes of action arise based upon conduct that occurred in New Jersey.  The Donnellys initiated the fraudulent scheme against the DeBiasas when they resided in New Jersey.

They incorporated Dovetail and operated their investment scheme in New Jersey.
Further, Joe Donnelly incorporated BitCoin Financial in New Jersey, and promised the
DeBiasas repayment of their investment in Dovetail through proceeds from his
investment in BitCoin Financial.

18.     Venue is proper in this District because Defendants' underlying conduct
occurred in this District.

## ALLEGATIONS

### A.     Plaintiffs Invest with the Donnellys

19.     In or about 2008, the DeBiasas' financial advisor, Fred Mancini,
introduced them to Joe Donnelly in connection with advising them about investing their
retirement savings.  Mr. Donnelly represented to the DeBiasas that he was a FINRA
licensed financial advisor and an authorized broker representative for Lincoln Financial
Group.

20.     Initially, Mr. Donnelly asked the DeBiasas to invest $50,000.00 to fund
the premium for a STOLI policy through Lincoln Financial Group.  The DeBiasas
transferred $50,000.00 to a trust account at the law firm of Abbott & Abbott with the
expectation that Mr. Donnelly would invest those funds in a STOLI policy and provide
them with an investment return over time.  He never did.

21.     Subsequent to their initial investment, Mr. Donnelly proposed an
investment strategy through which the DeBiasas would invest money with Dovetail,
which was owned and controlled by the Donnellys.  Mr. Donnelly would then use
Plaintiffs' investment funds to finance the premiums on STOLI policies through Lincoln

4

Financial Group, and would secure the investment by collateralizing Dovetail with those STOLI policies.

22.     On or about November 18, 2009, the DeBiasas borrowed funds in order to invest $300,000.00 with Mr. Donnelly.  Mr. Donnelly confirmed that Dovetail would invest their $300,000.00 in STOLI policies through Lincoln Financial Group and, further, that Dovetail would hold those insurance policies as collateral for the DeBiasas' investment.

23.     The DeBiasas simultaneously entered into the Note, memorializing their investment agreement with the Donnellys, as well as the Security Agreement, providing Plaintiffs with a security interest in Dovetail's insurance policy assets as collateral.  The Note and Security Agreement identified Ahuby Donnelly as Dovetail's representative for those agreements.

24.     Specifically, the Note provides, in pertinent part:

> DOVETAIL CAPITAL, LLC . . . hereby promises to pay to the order of RAYMOND DEBIASA AND SUZANNE DEBIASA . . . the principal sum of THREE HUNDRED THOUSAND ($300,000.00) DOLLARS with interest from the date hereof, payable at a rate of 12% per annum.
> . . .
> [Dovetail] shall make payments of interest only to [the DeBiasas] in monthly installments of THREE THOUSAND DOLLARS ($3,000.00) and 00/100 commencing January 1, 2010 and monthly thereafter on the first day of each month for a term of Twenty-Seven (27) Months until April 1, 2012 when all outstanding balances of principal and interest shall be due and payable in full.

25.     The Note further provides that, upon Dovetail's default, the "entire unpaid balance of this Note, together with all accrued and unpaid interest thereon, shall immediately be due and payable."

26.    The Note also provides for interest payments in the event of a default:

> Interest on the indebtedness evidenced by this note after default or maturity shall be due and payable at the rate of Fifteen (15%) percent per annum of the entire indebtedness computed from the date of default or the Maturity Date to the date of payment.  In addition, Borrower shall pay to Lender Alate charge@ [*sic*] in an amount equal to three percent (3%) of any amounts that are not paid within ten (10) days after the due date thereof to cover the extra expense involved in handling delinquent payments.

27.    In addition, the Note provides for attorneys' fees if the DeBiasas' were required to enforce the Note.  To wit:

> [Dovetail] agrees that in the event that an attorney is used to collect or enforce this Note or to enforce, declare or adjudicate any rights or obligations under this note, whether by suit or any other means whatever [*sic*], a reasonable legal fee shall be payable by [Dovetail] together with all costs and expenses of such collection, enforcement or adjudication and shall part of the principal obligation hereunder only if [the DeBiasas] are successful in such action.

28.    Moreover, in the event of a litigation, the Note provides that the borrower "expressly waives the right to interpose any defenses including any Statute of Limitations or any claim of latches, set-offs, counterclaims or cross-claims of any nature or description."

29.    The Security Agreement provides the DeBiasas with a security interest in collateral held by the borrower:

> In consideration of the sale of assets of [the DeBiasas] to [Dovetail], pursuant to [the Note, Dovetail] hereby grants to [the DeBiasas] a security interest in and, so long as the Note or any part of it is outstanding unpaid, a continuing lien upon, and Borrower hereby pledges as collateral to the [DeBiasas] . . .
>
> [A]ll tangible assets . . . including all insurance policies owned by [Dovetail.]

**B.**     **Mr. Donnelly Failed to Repay the DeBiasas' Principal Investment and Failed to Make All of the Duly Owed Interest Payments as was his Obligation Under the Note**

30.     Initially, Mr. Donnelly made monthly interest payments to the DeBiasas. However, by September 2013, those payments stopped.

31.     The DeBiasas demanded that Mr. Donnelly resume the payments, and Mr. Donnelly responded by telling the DeBiasas that neither he nor Dovetail had the money to make timely repayment, but promised to repay them as soon as possible.

32.     Eventually, Mr. Donnelly agreed to repay Plaintiffs through an installment plan over time.  Nevertheless, Mr. Donnelly failed to make the promised installment payments.

33.     Throughout 2014 and 2015, the DeBiasas continued to demand that the Donnellys repay their investment, but they did not receive further repayment.

34.     The Donnellys' failure to make payment was an event of default under the Note.  Under the terms of the Note, Dovetail – and by extension the Donnellys -- owe the DeBiasas at least $165,000.00.00 in investment principal, plus investment returns, interest owed due to the default, and attorneys' fees and costs of collection.

**C.**     **The DeBiasas Discover the Donnellys' Fraud**

35.     In or about January 2015, Mr. Donnelly invested in and co-founded BitCoin Financial, which is a company that markets itself as the first insurance and financial services company specifically created to handle the insurance needs of companies in the bitcoin industry.  Mr. Donnelly is the President of BitCoin Financial.

36.     In or about March 2015, the DeBiasas learned that the Donnellys had defrauded them out of their investment principal and returns, had diverted their

investment for their own use, including the funding of BitCoin Financial, and had for years misled them in order to disguise this ongoing fraudulent activity.

37.     Through their investigation into this fraud and based upon conversations with Mr. Donnelly's colleagues, the DeBiasas further learned that Mr. Donnelly was not licensed by FINRA to originate STOLI policies.

38.     In addition, the DeBiasas learned that Lincoln Financial Group had investigated Mr. Donnelly for his unlicensed insurance activities and that Lincoln Financial had revoked his permission to produce Lincoln Financial insurance policies.

39.     Moreover, the DeBiasas learned that Defendants did not use the DeBiasas' money to invest in STOLI policies, but instead used Plaintiffs' funds for their own purchases and investments, including expensive cars, a house in Florida, a Cessna airplane, and Mr. Donnelly's BitCoin Financial venture.

40.     Mr. Donnelly initially disguised the diversion of the DeBiasas' funds by making monthly interest payments to them, but then ceased making those payments, and repeatedly promised to pay the DeBiasas' back.

41.     As it turned out, Dovetail was merely a shell company, owned and controlled by the Donnellys, which the Donnelly's never capitalized and with respect to which the Donnellys failed to observe corporate formalities.  The Donnellys utilized Dovetail to solicit funds from the DeBiasas, but never actually used the DeBiasas' investment to fund or collateralize Dovetail.

D.    **Mr. Donnelly Promises to Repay Plaintiffs Out of BitCoin Financial Investment Returns**

42.    In or about March 2, 2015, Mr. Donnelly reassured the DeBiasas that he would repay their investment, explaining: "I'm doing everything I can, we're just not there yet."

43.    On March 25, 2015, Mr. Donnelly told the DeBiasas that Dovetail is "now defunct."  Mr. Donnelly wrote:

> You have a Promissory Note with DoveTail Capital, LLC, which is now defunct, for all intents and purposes. In fact, DVT was advised by counsel to declare bankruptcy, which has not been ruled out. DVT has NO assets, Obviously DoveTail can't repay this debt since it has NO assets.

44.    Nevertheless, Mr. Donnelly acknowledged his obligation to repay the DeBiasas, and assured them he was doing everything he could to return their investment, writing that "I've been trying to get it repaid, however it's going to take a little more time.  As I have in the past, I will continue to make this my top priority."

45.    As recently as April 2015, Mr. Donnelly again asked the DeBiasas for more time to repay their investment, telling them that they would be repaid out of BitCoin Financial's investment returns.  He told the DeBiasas: "I'm a partner in a BitCoin company . . . if we get a couple dozen of these deals, then it'll pay off (which I believe is in the cards)."  Further, he reiterated, "I'm doing everything in my power to rectify the situation . . . ."

46.    Since April 2015, Mr. Donnelly has made no payments.  The DeBiasas, are still owed at least $215,000.00 on their principal investments with Mr. Donnelly,

including from the Note and their initial $50,000 investment, plus investment returns,

interest and penalties under the Note.

### <u>COUNT ONE</u>
**(Securities Fraud—15 U.S.C. § 78j and 17 C.F.R. § 240.10b-5)**
**As Against Joe Donnelly, Ahuby Donnelly, and Dovetail Capital, LLC**

47.     Plaintiff incorporates the foregoing paragraphs as if fully pleaded herein.

48.     For the purpose of inducing the DeBiasas to invest in a promissory note

with Dovetail tied to the performance of STOLI policies, Defendants made numerous

material misrepresentations to the DeBiasas, including as follows:

> (1) Joe Donnelly was a FINRA licensed financial advisor and an
>      authorized broker representative for Lincoln Financial Group;
>
> (2) Defendants would invest the DeBiasas' money in STOLI policies and
>      hold those policies in Dovetail as collateral for the DeBiasas'
>      investment;
>
> (3) Defendants would provide the DeBiasas with a legitimate promissory
>      note that would grant them 12% interest per annum and the return of
>      their principal investment within three years; and
>
> (4) Defendants would provide the DeBiasas with a legitimate security
>      agreement that would grant them a security interest in Dovetail's
>      assets, including STOLI policies held by Dovetail as collateral for the
>      DeBiasas' investment.

49.     After inducing the DeBiasas to invest with them, Defendants

misrepresented to the DeBiasas that they had, in fact, invested the DeBiasas' money in

legitimate STOLI policy investments, were holding those policies as collateral for the

DeBiasas' investment, and intended to repay the DeBiasas.

50.     As recently as April 2015, Defendants continued to misrepresent to the

DeBiasas that they were working to repay their investment, and, specifically, would

repay them out of Mr. Donnelly's investment in BitCoin Financial.

51.     Plaintiffs relied on these misrepresentations by investing $350,000 of their retirement savings and borrowed money with Defendants, including a $300,000 promissory note with Dovetail.

52.     Defendants' representations were demonstrably false:

(1) Joe Donnelly was not, at all relevant times, a FINRA licensed financial advisor or an authorized broker representative for Lincoln Financial Group;

(2) Defendants did not invest the DeBiasas' money in STOLI policies or hold them in Dovetail as collateral for the DeBiasas' investment;

(3) Defendants did not provide the DeBiasas with a legitimate promissory note; and

(4) Defendants did not provide the DeBiasas with a legitimate security agreement.

53.     Rather, Defendants Joe and Ahuby Donnelly diverted the DeBiasas' money for their own personal and business use and failed to capitalize Dovetail or provide it with STOLI policies as collateral for the DeBiasas' investment.

54.     Further, in January 2015, Defendant Joe Donnelly fraudulently diverted Plaintiffs' monies to form a new venture, Defendant BitCoin Financial.  Despite Mr. Donnelly's promises that he would repay the DeBiasas out of his BitCoin Financial investment, he has failed to repay them any money since he founded BitCoin Financial.

55.     Plaintiffs were harmed by Defendants' misrepresentations as Defendants have failed to pay (i) $165,000 on the DeBiasas' principal investment in the Note, (ii) investment returns owed under the Note, and (iii) $50,000 on the DeBiasas' initial investment with Mr. Donnelly.

## COUNT TWO
### (Common Law Fraud)
### As Against Joe Donnelly, Ahuby Donnelly, and Dovetail Capital, LLC

56.     Plaintiffs incorporate the foregoing paragraphs as if fully pleaded herein.

57.     For the purpose of inducing the DeBiasas to invest in a promissory note with Dovetail tied to the performance of STOLI policies, Defendants made numerous material misrepresentations to the DeBiasas, including as follows:

> (1) Joe Donnelly was a FINRA licensed financial advisor and an authorized broker representative for Lincoln Financial Group;

> (2) Defendants would invest the DeBiasas' money in STOLI policies and hold those policies in Dovetail as collateral for the DeBiasas' investment;

> (3) Defendants would provide the DeBiasas with a legitimate promissory note that would grant them 12% interest per annum and the return of their principal investment within three years; and

> (4) Defendants would provide the DeBiasas with a legitimate security agreement that would grant them a security interest in Dovetail's assets, including STOLI policies held by Dovetail as collateral for the DeBiasas' investment.

58.     After inducing the DeBiasas to invest with them, Defendants misrepresented to the DeBiasas that they had, in fact, invested the DeBiasas' money in legitimate STOLI policy investments, were holding those policies as collateral for the DeBiasas' investment, and intended to repay the DeBiasas.

59.     As recently as April 2015, Defendants continued to misrepresent to the DeBiasas that they were working to repay their investment, and, specifically, would repay them out of Mr. Donnelly's investment in BitCoin Financial.

60.     Plaintiffs relied on these misrepresentations by investing $350,000 of their retirement savings and borrowed money with Defendants, including a $300,000 promissory note with Dovetail.

61.     Defendants' representations were demonstrably false:

(1) Joe Donnelly was not, at all relevant times, a FINRA licensed financial advisor or an authorized broker representative for Lincoln Financial Group;

(2) Defendants did not invest the DeBiasas' money in STOLI policies or hold them in Dovetail as collateral for the DeBiasas' investment;

(3) Defendants did not provide the DeBiasas with a legitimate promissory note; and

(4) Defendants did not provide the DeBiasas with a legitimate security agreement.

62.     Rather, Defendants the Donnellys diverted the DeBiasas' money for their own personal and business use and failed to capitalize Dovetail or provide it with STOLI policies as collateral for the DeBiasas' investment.

63.     Further, in January 2015, Defendant Joe Donnelly fraudulently diverted Plaintiffs' monies to form a new venture, Defendant BitCoin Financial.  Despite Mr. Donnelly's promises that he would repay the DeBiasas out of his BitCoin Financial investment, he has failed to repay them any money since he founded BitCoin Financial.

64.     Plaintiffs were harmed by Defendants' misrepresentations as Defendants have failed to pay (i) $165,000 on the DeBiasas' principal investment in the Note, (ii) investment returns owed under the Note, and (iii) $50,000 on the DeBiasas' initial investment with Mr. Donnelly.

## COUNT III
### (Breach of Contract)
### As Against Joe Donnelly, Ahuby Donnelly, and Dovetail Capital, LLC

65.     Plaintiffs incorporate the foregoing paragraphs as if fully pleaded herein.

66.     Plaintiffs and Defendant Dovetail, through Joe and Ahuby Donnelly, entered into a promissory note and security agreement, whereby Defendant was required to return Plaintiffs' principal investment over time with 12% interest per annum and Plaintiffs received a security interest in Dovetail's assets, including STOLI policies held by Dovetail as collateral for the DeBiasas' investment.

67.     Defendant Dovetail breached those agreements by failing to make required payments under the Note and by failing to capitalize Dovetail with STOLI policies.

68.     Under the Note, Plaintiffs are owed $165,000, plus investment returns of 12% per annum, penalties, interest, and attorneys' fees and costs.

69.     The Note specifically called for interest payments in the event of a default, including 15% interest from the time of default, September 2013, and an additional 3% to cover the costs of the delinquency incurred by the DeBiasas.  Moreover, the Note called for attorneys' fees in the event the DeBiasas' brought a successful action to enforce the terms of the Note.

70.     Defendants Joe and Ahuby Donnelly are liable for breaching Dovetail's agreements with the DeBiasas.

71.     Dovetail is a closely held company, owned and controlled by the Donnellys.  The Donnellys did not capitalize Dovetail from its inception and did not

observe corporate formalities.  Moreover, the Donnellys failed to use the money from the DeBiasas' investment to collateralize Dovetail as required by the Security Agreement.

72.     As a direct and proximate result of Defendants' breach of the Note and Security Agreement, Plaintiffs have been damaged in not being compensated as required by the Note.

### COUNT IV
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**
**As Against Joe Donnelly, Ahuby Donnelly, and Dovetail Capital, LLC**

73.     Plaintiffs incorporate the foregoing paragraphs as if fully pleaded herein.

74.     In every contract under New Jersey law, there exists an implied covenant of good faith and fair dealing.

75.     Plaintiffs and Defendant Dovetail, through Joe and Ahuby Donnelly, entered into a promissory note and security agreement whereby Defendant was required to return Plaintiffs' principal investment over time with 12% interest per annum and Plaintiffs received a security interest in Dovetail's assets, including STOLI policies held by Dovetail as collateral for the DeBiasas' investment.

76.     Defendant Dovetail breached the covenant of good faith and fair dealing in the Note and Security Agreement by failing to make required payments under the Note, failing to invest in STOLI policies, and failing to capitalize Dovetail with STOLI policies.

77.     Under the Note, Plaintiffs are owed $165,000, plus investment returns of 12% per annum, penalties, interest, and attorneys' fees and costs.

78.     The Note specifically called for interest payments in the event of a default, including 15% interest from the time of default, September 2013, and an additional 3% to

cover the costs of the delinquency incurred by the DeBiasas.  Moreover, the Note called for attorneys' fees in the event the DeBiasas' brought a successful action to enforce the terms of the Note.

79.     Defendants Joe and Ahuby Donnelly are liable for breaching the covenant of good faith and fair dealing in their agreements with the DeBiasas.

80.     Dovetail is a closely held company, owned and controlled by the Donnellys.  The Donnellys did not capitalize Dovetail from its inception and did not observe corporate formalities.  Moreover, the Donnellys failed to use the money from the DeBiasas' investment to collateralize Dovetail as required by the Security Agreement.

81.     As a direct and proximate result of Defendants' breach of the covenant of good faith and fair dealing in the Note and Security Agreement, Plaintiffs have been damaged in not being compensated as required by the Note.

**COUNT V**
**(Conversion)**
**As Against Joe Donnelly and Ahuby Donnelly**

82.     Plaintiffs incorporate the foregoing paragraphs as if fully pleaded herein.

83.     Defendants converted $215,000.00 of the DeBiasas' monies for their own personal gain.

84.     The Donnellys were unauthorized to exercise a right of ownership over the DeBiasas' monies such that they used them for an unintended purpose.

85.     The Donnellys exercised dominion and control over the DeBiasas' property and converted their monies for their own personal gain as opposed to making returns on their investment which was their property.

86.     Plaintiffs' injuries have been a direct and proximate result of Defendants' conversion of their property.

## COUNT VI
### (Unjust Enrichment)
### As Against Joe Donnelly and Ahuby Donnelly

87.     Plaintiffs incorporate the foregoing paragraphs as if fully pleaded herein.

88.     Plaintiffs invested $350,000 with Defendants with the understanding that Defendants would invest their money in STOLI policies, hold those policies as collateral for Plaintiffs' investment, and repay Plaintiffs' the principal investment plus investment returns at a rate of 12% interest per annum.

89.     Defendants failed to invest Plaintiffs' money in STOLI policies, hold those policies as collateral for Plaintiffs' investment, or repay Plaintiffs' the principal investment plus investment returns at a rate of 12% interest per annum.  Rather, Defendants kept the DeBiasas' money for their own personal and business use.

90.     Defendant Joe Donnelly diverted the DeBiasas' monies, in part, to fund his investment in Defendant BitCoin Financial.

91.     Defendants have been unjustly enriched by their conduct by at least $215,000.

92.     As a direct and proximate result, Plaintiffs have suffered pecuniary losses.

## COUNT VII
### (Uniform Fraudulent Conveyance Act—N.J.S.A. 25:2-20, *et seq.*)
### As Against All Defendants

85.     Plaintiffs incorporate the foregoing paragraphs as if fully pleaded herein.

86.     Plaintiffs entered into a Note and Security Agreement promising them return of their principal plus a 12% return on their investment per annum.

87.     The Donnellys never intended to perform their obligations under the Note. Indeed, the Donnellys used the DeBiasas' monies to live a lavish lifestyle and invest in other business opportunities.

88.     Joe Donnelly diverted the DeBiasas funds from their investment purpose with Dovetail to his own venture, Bitcoin Financial, a company that identifies him as President and co-founder.

89.     Mr. Donnelly and Bitcoin Financial had the actual intent to hinder, delay, and defraud the Donnellys' creditors—the DeBiasas— when they transferred the DeBiasas' investment monies to BitCoin Financial.  The DeBiasas did not receive anything of value in exchange for this transfer of monies, but critically, Mr. Donnelly told them he would repay them from his BitCoin Financial venture.

90.     Mr. Donnelly and Bitcoin knowingly, inappropriately, and illegally transferred the DeBiasas' monies in order to, among other things, fund Bitcoin, causing the DeBiasas severe economic harm of at least $215,000.00, plus lost contractual returns, interest, and penalties owed to the DeBiasas.

WHEREFORE, Plaintiffs pray that this Court:

a)      Enter judgment for Plaintiffs on all counts of the Complaint and award them compensatory damages;

b)      Enter an award of punitive damages due to the willfulness of Defendants' conduct;

c)      Award Plaintiffs their costs and attorneys' fees;

d)      Award Plaintiffs prejudgment interest; and

e)      Award Plaintiffs any other such relief as this Court deems just and proper.

18

Dated: February 1, 2016

SPIRO LLC

By: _s/ Jason C. Spiro_

Jason C. Spiro
Jeffrey A. Shooman
Carolyn B. Rendell
830 Morris Turnpike, 2nd Floor
Short Hills, NJ 07078
(973) 232-0881
jspiro@spirolawllc.com
jshooman@spirolawllc.com
crendell@spirolawllc.com

*Attorneys for Plaintiffs*

## <u>CERTFICIATE OF NON-ARBITRABILITY</u>

**Jason C. Spiro**, of full age, certifies that pursuant to Local Civil Rule 201.1, the within

matter is not arbitrable, being that the Complaint seeks damages that are in excess of $150,000.

 

 

**SPIRO LLC**

 

Dated: February 1, 2016            s/Jason C. Spiro_____
                                            Jason C. Spiro

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is not related to any other action, pending arbitration, or administrative proceeding currently pending in any court.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


Dated: February 1, 2016                                              **SPIRO LLC**

                                                                     s/ Jason C. Spiro
                                                                     Jason C. Spiro